

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Burden H. Walker
Assistant United States Attorney
Burden.Walker@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4849
MAIN: 410-209-4800
FAX: 410-962-2310

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
CLERK'S OFFICE AT BALTIMORE
AUG 24 PM 4:49
____ DEPUTY

July 10, 2018

Howard L. Cardin, Esq.
211 St. Paul Street,
Baltimore, MD 21202

> Re:    United States v. Richard Hiller
>        Criminal No. ELH-18-0389 (D. Md.)

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Richard Hiller (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 23, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.    The Defendant agrees to plead guilty to Counts One and Two of the Information, which charge the Defendant with Conspiracy to Distribute Oxycodone and Distribution of Oxycodone, in violation of 21 U.S.C. § 846 and § 841, respectively. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offense(s)

2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Count One, Conspiracy to Distribute Oxycodone:**

That on or about the time alleged in the Information, in the District of Maryland, the Defendant:

    a)  Agreed with one or more other persons to distribute a mixture or substance containing oxycodone, a Schedule II controlled substance;

    b)  Was party to, or a member of, that agreement; and

1

c) Joined the agreement or conspiracy knowing of its objective to distribute or dispense a controlled substance intending to join together with at least one other alleged co-conspirator to achieve those objectives.

**Count Two, Distribution/Dispensing of Oxycodone:**

That on or about the time alleged in the Information, in the District of Maryland, the Defendant

a) Distributed a mixture or substance containing oxycodone, a Schedule II controlled substance; and

b) Did so knowingly and intentionally.

Penalties

3.     The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON- MENT | MAX IMPRISON- MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS- MENT |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | N/A | 20 years | 4 years | $1,000,000 | $100 |
| 2 | 21 U.S.C. § 841 | N/A | 20 years | 4 years | $1,000,000 | $100 |

a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a

schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

3

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     a.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that **the applicable base offense level is a level 30** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2D1.1(c)(5) to account for approximately 20,500 15-mg pills of oxycodone, which is the equivalent of approximately 2,060 kilograms of marijuana.

b.     Pursuant to USSG § 3B1.3, there is a 2-level increase in the offense because the defendant abused a position of public or private trust, or used a special skill, in a manner that

significantly facilitated the commission of the offense. **With this 2-level increase, the adjusted offense level is 32.**

     c.     The parties agree that **if** the Defendant meets criteria under USSG § 5C1.2 ("safety valve") that his offense should decreased by an additional two levels pursuant to USSG § 2D1.1(b)(17). **If** the Defendant obtains this 2-level reduction, **the adjusted offense level would be 30.**

     d.     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. If the Defendant receives this three-level reduction, **the final offense level will be 27.**

7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

5

a.	The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

b.	The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

(i)	The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

(ii)	This Office reserves the right to appeal any sentence below a statutory minimum.

c.	The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Defendant's Conduct Prior to Sentencing and Breach

11.	a.	Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b.	If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither

6

the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

12. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____/s/_____
Burden H. Walker
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____
Date

_____
Richard Hiller

7

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/18/18
Date

Howard Cardin, Esq.

8

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Between about January 2014 and February 2017, in the District of Maryland, the Defendant agreed with at least one other person to distribute mixtures or substances containing oxycodone, a Schedule II controlled substance.

During the course of the conspiracy, the Defendant was a pharmacist licensed by the Maryland Board of Pharmacy and working at Hillendale Pharmacy, located at 6875 Loch Raven Blvd. in Towson, Maryland. Beginning in January 2014, the Defendant began to fill fraudulent prescriptions uttered by several women for 15-milligram oxycodone pills in return for sexual favors. On numerous occasions between January 2014 and February 2017, the Defendant would have two women—L.C. and A.F.—come to the Hillendale Pharmacy prior to the opening of the pharmacy and make them perform sexual intercourse or other sexual acts in the rear area of the pharmacy prior to filling the fake prescriptions for oxycodone. At one point, the Defendant described the arrangement to L.C. as a "quid pro quo" where he "scratched her back," and she "scratched his."

The Defendant filled the prescriptions knowing they were fraudulent and outside the usual course of professional practice. In an effort to hide the conspiracy, the fake prescriptions uttered by L.C. would often use multiple different names, including fake names and those of family members who had never once entered the Hillendale Pharmacy. Both L.C. and A.F. were addicted to oxycodone and would resell many of the pills to maintain their addiction. On February 6, 2017, the Defendant knowingly filled a fraudulent prescription for 240 pills of 15-milligram oxycodone for A.F., the last time he filled a fake prescription for her.

Also starting in about 2014, the Defendant began to distribute oxycodone to a third woman—E.G.—outside the usual course of his professional practice. In return for distributing oxycodone to her, often without any valid prescription to cover them, the Defendant would ask E.G. to send him nude photographs and sexual videos of herself and allow him to grope and kiss her. E.G. would sometimes use her real first name to obtain oxycodone prescriptions from one doctor and then use her middle name as her first name to simultaneously obtain oxycodone prescriptions from a second doctor. The Defendant would then fill both prescriptions knowing that they had been fraudulently obtained. At one point, when E.G. rejected one of the Defendant's advances, he called E.G.'s doctors to notify them that she was fraudulent obtaining prescriptions from both of them. E.G. would regularly resell the oxycodone pills that she obtained from the Defendant.

All told, it was reasonably foreseeable to the Defendant that the conspiracy would distribute approximately 20,500 pills each containing 15 milligrams of oxycodone. This is the equivalent of approximately 2,060 kilograms of marijuana under the U.S. Sentencing Guidelines.

On June 5, 2018, law enforcement executed a search warrant at the Hillendale Pharmacy and the Defendant's residence. The Defendant was immediately cooperative and confessed to the misconduct described above.

Burden H. Walker
Assistant United States Attorney

Richard Hiller
Defendant

Howard Cardin, Esq.
Counsel for Defendant